IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


STEVEN J. MUNIC,                          :
                                          :
              Plaintiff                   :
                                          :
       v.                                 :      CIVIL NO. 4:CV-13-2245
                                          :
WARDEN DAVID LANGAN, ET AL., :                   (Judge Brann)
                                          :
       Defendants                         :

## MEMORANDUM

September 18, 2015

## Background

       This _pro se_ civil rights action was filed by Steven J. Munic, who is

presently residing in Pleasantville, New Jersey, regarding his prior incarceration at

the Lackawanna County Prison, Scranton, Pennsylvania.  Munic previously filed

an Amended Complaint (Doc. 42) .

       Named as Defendants are the Commonwealth of Pennsylvania, Lackawanna

County, former Lackawanna County Commissioner  Corey D. O'Brien, and the

Honorable Vito Geroulo of the Court of Common Pleas of Lackawanna County.[1]

_____

       [1]    Ex-Commissioner O'Brien and Judge Geroulo are described as being
members of the Lackawana County Prison Board.

1

Plaintiff is also proceeding against three (3) Lackawanna County Prison employees: Warden Robert McMillan, Correctional Officers Johnson and Sopinski.

Munic states that while serving a criminal sentence in the State of New Jersey he was extradited to the Commonwealth of Pennsylvania on April 4, 2013 pursuant to a detainer and placed in the Lackawanna County Prison where he remained until October 2, 2013.[2] Upon his arrival, Munic was placed in Dorm B, a minimum security general population housing unit. The Plaintiff describes Dorm B as being an "insane asylum with violent predators helpless victims" and "a disaster waiting to happen." Id.

On May 14, 2013, Munic alleges that while being escorted to the gym by Officer Johnson, he was threatened with bodily injury by another prisoner, who had mental health issues and a history of threatening inmates and staff. Following this incident, an unidentified Sergeant removed Plaintiff from the gym and had the assailant moved to another housing unit.

Upon returning to Dorm B following the incident, Munic claims that he was attacked by over twenty-one (21) other prisoners for being a snitch. Plaintiff alleges Correctional Officer Sopinski was supervising Dorm B at the time and was

---

[2]    According to the Amended Complaint, the purpose of the detainer was to obtain "final disposition" of drug related charges pending against Munic in the Court of Common Pleas of Lackawanna County. Doc. 42, p. 11.

"well aware that I was being set up by inmates." Id. at p. 12. The Amended

Complaint additionally states that he assaulted by a unidentified single prisoner

with who is described only as having a tattoo on his arm which read

"Murderer/Killer."[3] Id. As a result of the assault, Munic purportedly suffered

multiple injuries including damage to his vision (left eye). The Amended

Complaint acknowledges that following the incident Dorm B was locked down,

Plaintiff's attacker was placed in segregation and issued a misconduct, and Munic

was moved to a segregated housing unit and later to a medium security cell block.

Approximately thirty (30) days later, Plaintiff speculates that he "believes" that

Correctional Officer Johnson was behind an unsuccessful attempt to have

Plaintiff's attacker reassigned to Munic's housing unit. Doc. 42, p. 13.

The Amended Complaint next contends that Plaintiff, who is Jewish and

"was still practicing his religion" at the time, was denied Kosher meals and celery

for two months[4] by Defendants Johnson and McMillan. Id. at p. 14. In addition

Munic was purportedly refused the opportunity to visit with his rabbi. Plaintiff

concludes that those alleged actions were in violation of the Religious Land Use

and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA) and the

---

[3] As a result of Munic's contradictory allegations it is unclear as to whether he was attacked by a single prisoner or a group of inmates.

[4] Munic claims that he lost thirty (30) pounds due to the lack of a Kosher diet.

3

Americans with Disabilities Act (ADA).  He was also allegedly subjected to verbal harassment over his religious beliefs by Johnson and other prison staff members who are not named as defendants in this matter.  Plaintiff further indicates that a letter he sent to Judge Geroulo complaining about the Kosher food issue did not result in any relief.[5]

It is next alleged that on July 3, 2013 all of the inmates on his cell block had their extra clothing confiscated.  Although the other inmates' clothing was subsequently returned, the Plaintiff was purportedly denied a change in clothing by Johnson for approximately twenty-three (23) days.  The final claim is that Munic was denied opportunity to participate in drug and alcohol treatment services by Johnson.  See Doc. 42, p. 20.

Defendants, with the exception of the Commonwealth of Pennsylvania, have responded to the Amended Complaint with a motion to dismiss.  See Doc. 76.  Since the Moving Defendants acknowledge that the failure to protect claim against Sopinski and the contentions that Johnson denied Plaintiff Kosher meals and left him without clean clothing for over three (3) weeks should proceed, the pending motion will be construed as seeking partial dismissal.

Plaintiff's motions (Docs. 79, 83, & 85) requesting that the motion to

---

[5]   Munic admits that President Judge Thomas Munley of the Court of Common Pleas of Lackawanna County directed Warden McMillan to provide him with a Kosher diet.

dismiss be stricken were denied on February 6, 2015. After being granted an extension of time, Plaintiff filed an opposing brief to the motion to dismiss. This matter is now ripe for consideration.

## **Discussion**

Moving Defendants seek dismissal of the Complaint on the grounds that: (1) Munic's RLUIPA claims are meritless; (2) a viable ADA claim is not alleged; (3) the claims against Judge Geruolo, ex-Commissioner O'Brien and Warden McMillan should be dismissed for lack of personal involvement; (4) there is no basis for municipal liability against Lackawanna County; and (5) the claims of verbal harassment are insufficient.

## **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short

and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v.

Kerner, 404 U.S. 519, 520 (1972).

**RLUIPA**

Defendants O'Brien, Geroulo, McMillan, Sopinski, and Johnson assert that the RLUIPA claims against them in their respective individual capacities as well as any requests for injunctive relief are subject to dismissal.  See  Doc. 81, p. 15.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..."  U.S. Const. Amend. I.  It is undisputed that prisoners do not entirely forfeit all constitutional guarantees by reason of their conviction and confinement.  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment.  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

However, imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion.  Thornburgh v. Abbott, 490 U.S. 401, 407 (1989).  An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

Similarly, in order to establish a viable RLUIPA claim, a prisoner must

likewise establish that he had a sincerely held religious belief and that a prison

policy or official practice substantially burdened his exercise of those religious

beliefs. A substantial burden is one where: (1) a prisoner is forced to choose

between following the precepts of his religion and forfeiting benefits otherwise

generally available to other inmates versus abandoning a precept of his religion in

order to receive a benefit; or (2) the government puts substantial pressure on an

adherent to substantially modify his behavior and to violate his beliefs. Gould v.

Beard, No. 07-55, 2010 WL 845566 *4-5 (W.D. Pa. Jan. 16, 2010).

Once a viable claim is asserted, the Government has the burden of

demonstrating the burden furthers a compelling governmental interest and is the

least restrictive means of doing so. See Washington v. Klem, 497 F.3d 272, 277-

78 (3d Cir. 2007); However, RLUIPA does not permit an action against

Defendants in their individual capacities." Sharp v. Johnson, 669 F.3d 144, 153

(3d Cir. 2012). Sovereign immunity has not been waived with respect to private

claims for monetary damage under RLUIPA against state officials in their official

capacities. See id.; Sossamon v. Texas, 563 U.S. 277, 131 S.Ct. 1651, 1660

(2011).

Accordingly, this Court agrees that any RLUIPA claims against the

individual Defendants in their individual capacities as well as any requests for

injunctive relief are subject to dismissal. Moreover, since Plaintiff is no longer

held at the Lackawanna County Prison, it is equally apparent that any request for injunctive relief is moot.  See  Marshall v. Pa. Dept. of Corrections, 499 Fed. Appx. 131, 134 (3d Cir. 2012)(preliminary injunctive relief not available under RLUIPA where prisoner has been transferred to another facility).  Accordingly, only the unaddressed RUIPA claims for monetary relief against the individual Defendants in their official capacities will proceed.

Based upon the liberal standards afforded to pro se litigants it appears that the Amended Complaint is also seeking relief under the First Amendment.  Since the pending motion to dismiss does not the address Munic's First Amendment claims for monetary relief against the individual Defendants, these allegations will also proceed.

**ADA**

The Moving Defendants next contend that Plaintiff fails to allege that he was deprived of anything because of a disability.  See Doc. 81, p. 22.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.[6]  The ADA seeks "to assure even handed

---

[6] The regulations implementing the ADA define a "qualified individual with a disability" as:

(continued...)

treatment and the opportunity for [disabled] individuals to participate in and benefit from programs [receiving financial assistance]. <u>Southeastern Community College v. Davis</u>, 442 U.S. 397 (1979). <u>P.C. v. McLaughlin</u>, 913 F.2d 1033, 1041 (2d Cir. 1990).    The "evenhanded treatment" requirement does not, however, impose an affirmative obligation on public entities to expand existing programs but only that disabled individuals receive the same treatment as those who are not disabled. It has been recognized that the provisions of the ADA are applicable to prisoners confined in state correctional institutions. <u>See</u> <u>Pa. Dept. of Corrections v. Yeskey</u>, 524 U.S. 206 (1998).

Based upon a liberal construction of the Amended Complaint, Plaintiff has not sufficiently demonstrated that he is disabled for purposes of the ADA. Second, the alleged conduct by the Defendants does not set forth a viable basis for a claim that Plaintiff was subjected to discrimination on the basis of any disability. Accordingly, the Court will grant the request for dismissal of Munic's ADA

---

[6](...continued)
"An individual with a disability who, with or without reasonable modifications to rules, policies or practices, . . . meets the essential eligibility requirements for the . . . participation in programs or activities provided by a public entity."

28 C.F.R. § 35.104 (1993).

claim.[7]

**<u>Verbal Threats</u>**

The Amended Complaint also includes allegations that Correctional Officer Johnson made derogatory remarks to Plaintiff regarding his religious beliefs and also threatened to move an inmate who previously assaulted the Plaintiff into the same cell block. Moving Defendants contends that these alleged instances of verbal abuse do not set forth a viable constitutional claim. <u>See</u> Doc. 81, p. 24, n. 8.

The use of words generally cannot constitute an assault actionable under § 1983. <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 n.7 (2d Cir.); <u>Maclean v. Secor</u>, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); <u>Murray v. Woodburn</u>, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. <u>Balliet v. Whitmire</u>, 626 F. Supp. 219,

---

[7] Where, as here, a plaintiff has been granted leave to proceed <u>in forma pauperis</u>, a district court may dismiss a claim which is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327-28 (1989), <u>Douris v. Middleton Township</u>, 293 Fed. Appx. 130, 132 (3d Cir. 2008).

228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment, with some reinforcing act accompanying it, however, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  See Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395, 398 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife).  Moreover, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient.  See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008);   Wright v. O'Hara, 2004 WL 1793018 *7  (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that the verbal threats and religious insults allegedly voiced against Munic were accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas.  More importantly, it is

not alleged that the alleged verbal abuse was accompanied by any physically intrusive behavior.  Given the circumstances described by Plaintiff, the purported verbal remarks attributed to Correctional Officer Johnson, although offensive, were not of such magnitude to shock the conscience as contemplated by this Court in S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa.  2001); they, did not rise to the level of a constitutional violation.

**Personal Involvement**

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not enjoy a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner"). Consequently, any attempt by Plaintiff to establish liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

### Commissioner O'Brien/Judge Geroulo

The Amended Complaint seeks to establish liability against ex-Lackawanna

14

County Commissioner O'Brien and Judge Geroulo on the basis of their duties as members of the Lackawanna County Prison Board.

There are no allegations that either of those Defendants were involved in the day to day operations of the prison. Second, as discussed above, any attempt to establish liability against those two officials for failure to respond to complaints made by the Plaintiff to the Prison Board is equally insufficient. Third, there are no contentions that any of the alleged violations of RLUIPA or Plaintiff's constitutional rights resulted from a policy or procedure enacted or ratified by the Prison Board. Based upon an application of <u>Rode,</u> it is apparent that Plaintiff's attempt to establish liability against the two Prison Board members is subject to dismissal.[8]

---

[8] Plaintiff also indicates that Judge Geroulo failed to take action in response to a letter regarding the lack of Kosher food. A copy of a written response by Judge Geroulo provided by Munic advised the inmate that because he was presiding over Plaintiff's then pending state criminal prosecution he would not read his <u>pro se</u> letter but would forward it to Plaintiff's criminal defense counsel.

It is a well-established principle of law that judges are absolutely immune from suit for damages for conduct performed in the course of their official duties. <u>Stump v. Sparkman</u>, 435 U.S. 349, 359 (1978); <u>Oatess v. Sobolevitch</u>, 914 F.2d 428, 431 (3d Cir. 1990) (recognizing that a court may dismiss an allegation against a judge based on an exercise of judicial power). Consequently, since the failure to respond claim against Judge Geroulo is based on actions taken by that Defendant in the exercise of his official duties during the course of Munic's state criminal proceedings, he is entitled to absolute immunity from monetary damages.

**COs Sopinski and Johnson**

Moving Defendants next maintain that Defendant Sopinski is entitled to entry of dismissal with respect to the free exercise of religion and denial of clothing related claims on the basis of non-personal involvement. They similarly argue that the Amended Complaint with respect to Johnson should proceed only with respect to the denial of Kosher meals and inadequate clothing claims.

This Court agrees that the Amended Complaint only seeks to impose liability against CO Sopinski based upon that Defendant's failure to protect him from being assaulted by other prisoners. Pursuant to the standards set forth in <u>Rode</u>, this Court agrees that Sopinski is entitled to dismissal with respect to the other allegations set forth in the Amended Complaint.

Likewise, there are no factual contentions set forth by Munic asserting personal involvement by Johnson in the failure to protect claims. Accordingly under <u>Rode</u>, this Court agrees that the allegations regarding Johnson and the denial of Kosher meals and inadequate clothing should proceed. In addition, the pending motion to dismiss does not address the contention that Johnson deliberately denied Plaintiff access to drug and alcohol treatment because of his religious beliefs. This unaddressed claim against Correctional Officer Johnson will also proceed.

**Lackawanna County**

A municipal body or other local governmental unit, not part of a state for

16

Eleventh Amendment purposes, may be a "person" subject to suit under 42 U.S.C. § 1983 Monell, 436 U.S. at 690-91 ("Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies.") "Local governing bodies, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. See also Board of County Comm'rs of Bryan County, OK v. Brown, 520 U.S. 398, 403-07 (1997); Roman v. Jeffes, 904 F.2d 192, 196-97 (3d Cir. 1990); Illiano v. Clay Township, 892 F. Supp. 117, 121 (E.D. Pa. 1995).

However, it has been repeatedly held that a local government unit may not be subjected to § 1983 liability on a theory of respondeat superior. Bryan County, 520 U.S. at 403; City of Canton v. Harris, 489 U.S. 378, 392 (1989); Pembaur v. Cincinnati, 475 U.S. 469, 478-79 (1986); Monell, 436 U.S. at 691; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, "... a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bryan County, 520 U.S. at 403; Beck, 89 F.3d at 971. In Bryan County, the United States Supreme Court elaborated on the showing required for municipal liability under § 1983, stating:

> . . . [I]t is not enough for a § 1983 plaintiff merely to
> identify conduct properly attributable to the municipality.
> The plaintiff must also demonstrate that through its
> deliberate conduct, the municipality was the 'moving
> force' behind the injury alleged.  That is, a plaintiff must
> show that the municipal action was taken with the
> requisite degree of culpability and must demonstrate a
> direct causal link between the municipal action and the
> deprivation of federal rights.

Id. at 404; see Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996).

The United States Court of Appeals for the Third Circuit has held that a local government unit can be held liable under § 1983 "only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Andrews, 895 F.2d at 1480 (citing Monell, 436 U.S. at 694).  Custom can be established by proof of knowledge and acquiescence.  Fletcher v. O'Donnell, 867 F. 2d 791, 793-4 (3d Cir. 1989).

With respect to Lackawanna County, the Moving Defendants argue that "the Complaint fails to make any allegations showing there was "an established policy, practice, or custom that directly caused the constitutional harm."  Doc. 81, p. 25. Based upon a review of the Amended Complaint, this Court agrees that there is no discernible contention that Plaintiff's constitutional rights or the mandates of RLUIPA were violated as the result of any existing formal county policy. Additionally,  there are no facts alleged which would show that the any of the

alleged constitutional deprivations suffered by Munic existed on a systematic basis. As such, this is not a case where liability is being asserted based upon wide-spread conditions or customs so common as to infer official knowledge and adoption of the violation. Based upon those considerations, this Court agrees with the argument that a viable claim has not been set forth against Defendant Lackawanna County.

### Warden McMillan

Moving Defendants further argue that any claims premised upon Warden McMillan's supervisory capacity or failure to respond to Munic's administrative grievances are also subject to dismissal. <u>See</u> Doc. 81, pp. 24-26.

This Court agrees that any attempt by Plaintiff to establish liability against Warden McMillan solely based upon either the supervisory position he holds at the Lackawanna County Prison or the substance or lack of response to Munic's institutional grievances does not by itself support a constitutional due process claim. It is also apparent that the Amended Complaint has not sufficiently shown that McMillan was involved in the alleged events of May 14, 2013 when Munic was purportedly assaulted by other prisoners due to a failure to protect his safety by CO Sopinski. Based upon an application of <u>Rode</u>, Warden McMillan is entitled to entry of dismissal with respect to said claim since there are no contentions that he was involved in, directed, or ratified the misconduct attributed to Sopinski.

Likewise, there are no factual contentions set forth by Plaintiff showing that the Warden had any involvement or participation whatsoever in the alleged denial of adequate clothing and access to drug and alcohol treatment attributed to CO Johnson. Hence, McMillan is likewise entitled to entry of dismissal with respect to said claims on the basis of lack of personal involvement.

However, with respect to the claims of religious interference, the Amended Complaint adequately shows personal involvement by the Warden. The contentions that the Warden delayed a directive from Judge Munley to provide Kosher food and that McMillan personally met with Plaintiff and tried to undermine his request to be provided with Kosher food sufficiently allege personal involvement by the Warden in religious interference; this claim will also proceed.

**Commonwealth of Pennsylvania**

Also named as a Defendant in this matter is the Commonwealth of Pennsylvania. For the reasons set forth below sua sponte dismissal will be granted in favor of this defendant. The Eleventh Amendment bars all suits against a state and its agencies in federal court that seek monetary damages. Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir. 2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003). As such, Munic's damage claims brought against the Commonwealth of Pennsylvania are barred by the Eleventh Amendment. It is additionally noted that the day-to-day operations of the

Lackawanna County Prison are not controlled by the Commonwealth but rather by county official;s as such there is no discernible basis for liability under RLIUPA against the Commonwealth.

An appropriate Order will enter.

BY THE COURT:

__s/ Matthew W. Brann_____
Matthew W. Brann
United States District Judge